## Hollowbush *v.* Ogden, Appellant.

*Contract—Breach—Exchange of properties—Liquidated damages.*

In an action of assumpsit brought to recover five hundred dollars liquidated damages under an agreement for the exchange of certain properties between plaintiff and defendant, a verdict and judgment for plaintiff will be sustained where the evidence for the plaintiff, although contradicted, tended to show that the defendant never made any tender of the deed, and did not furnish the plaintiff papers or information for drawing a deed until the time limit in the contract had expired, but about that time told the plaintiff that he could not perform the contract.

Argued Oct. 12, 1917.    Appeal, No. 238, Oct. T., 1917, by defendant, from judgment of C. P. No. 4, Philadelphia Co., March T., 1916, No. 1428, on verdict for plaintiff in case of Frank A. Hollowbush v. James F. Ogden.    Before ORLADY, P. J., HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Affirmed.

Assumpsit to recover liquidated damages under a contract.    Before FINLETTER, J.

At the trial FINLETTER, J., charged in part as follows:

This is a suit on a contract for the purchase and exchange of certain real estate in California for real estate in Philadelphia. It is a contract made up of mutually dependent covenants. That is, both parties are bound to perform certain things, one to convey the real estate in one place, and the other to convey real estate in the other place. The performance of a contract of that kind necessarily should take place simultaneously, each party giving to the other the deed for his property and receiving the deed for the other property. Or if there is not a performance by a conveyance of the property by means of a deed, there should be a tender, each party is bound to make a tender or an offer to perform on his part, providing, of course, that the other party performs on the other part. That is to say, each should approach the other with the deed of the property of the person offering drawn out and signed and ready for delivery to the other man, and at the same time demanding a receipt from him of a like deed for the property on the other side. So that under ordinary circumstances there should be made in a case of this kind what is called a tender or offer to perform by the party who claims from the other party a breach of such a contract as this, except in circumstances such as I am about to state to you. If it is plain from the acts, and from the conduct and from the language, or plain in any way, to one of the parties that the other party does not intend to perform the contract, then there is no necessity for the party who is not failing to go through the idle form of preparing a deed and making an offer, because that would be assured, ridiculous, to put any such burden as that on the other party......In this case the testimony shows that the contract before you was entered into. There is no dispute about that. There is no dispute that there was no performance by either one of the parties to the contract. The disputes centre around, therefore, the questions of the offer or tender to perform, and whether or not that offer was rendered unnecessary because of the previous refusal of one of the

parties to perform, or statement if his impossibility to perform. A contract like this for the conveyance of real estate involves the preparation of deeds, and of course, in a deed there must be a very careful description of the property conveyed, and it is usual for the man who is buying property and who therefore wants to make sure that the deed he is going to get is right, to either prepare that deed himself or have his own conveyancer prepare it, with everything except the signature, and hand that to the other man and ask for his signature. That is the usual course of proceeding, and in order to equip the other man for the drawing of such a deed generally the old deeds are handed over, because they contain the description of the property. There has been a good deal of testimony in this case about what various people did about handing deeds over or not handing deeds over. But that is not important on the question of tender here, except to show a readiness of the party who has done that sort of thing, furnished the other man with information upon which to act, and put the man in shape to carry out in a practical way and perform the contract, to show the readiness of the man doing that to perform the contract. To illustrate what I mean, in order for Mr. Hollowbush to make a tender of the California property, a legal tender, supposing he had to make it, and I will discuss in a moment whether he had to make it or not, in order for him to make a legal tender of the California property Mr. Hollowbush should have taken the deed in his hand already prepared and signed by himself and offered it to Mr. Ogden. That is the legal part of it. The practical side was what these people undertook to do. Mr. Hollowbush told Mr. Ogden, who as a purchaser wanted to draw his own deed and see it was right, where he could get the old deed and draw the deed himself. That was the practical way of getting at the matter, and the only importance however of that is to show or not to show, as you may think, a readiness on the part of Mr. Hollowbush to carry out the contract, and the same

82, (1918).]　　Charge of Court below—Assignment of Error.

might have been true of the other man with regard to the Philadelphia property. But that would not mean a tender, that state of affairs would not be a tender of. the deed. The only way to make a tender would be to draw the deed and sign it and say, "I offer it to you, now, hand me back a similar deed for your property here." So much for the tender. Upon the question of whether or not it was necessary for a tender to be made by Mr. Hollowbush at this end, of the property, he says this occurred, that after the time had elapsed Mr. Ogden came to his attorney and instead of offering him a deed for the five houses in Philadelphia, tendering it to him, offered to give it to him in exchange for the California property, he not only did not do that but he never even sent the papers and equipped Mr. Hollowbush for drawing the deed himself, until the 3d of February, until long after the time had elapsed, and about that time instead of indicating any intention to perform the contract he told him he could not perform it, and he actually wanted to borrow money from the man to buy his own property with, showing that he could not perform it. If that is true it would be an idle formality to require Hollowbush to go to the trouble of drawing a deed for the California property and making tender of it, and there should be no tender required under these circumstances from him in order to put him in condition to claim from the other side for the nonperformance of the contract. If Ogden came there and said he could not perform it and wanted a new deal made that is a repudiation of the old deal and rendered unnecessary any formal tender on the part of Hollowbush of the deed for the western property.

Verdict and judgment for $575. Defendant appealed.

*Error assigned*, among others, was in refusing defendant's motion for judgment n. o. v.

*Gustave L. Blieden*, with him *Samuel M. Israeli*, for appellant.

*Samuel Knox White,* with him *Charles Shepherd Thompson,* for appellee.

PER CURIAM, March 2, 1918:

The controverted facts in this case were fairly submitted to the jury in a charge of which the defendant has no just reason to complain.

The assignments of error are overruled and the judgment is affirmed.